UNITED STATES of America,
Plaintiff–Appellant,

v.

Ronald Douglas DEARING,
Defendant–Appellee.

No. 92–30445.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1993.

Decided Nov. 23, 1993.

Joseph H. Harrington, Asst. U.S. Atty., Spokane, WA, Nina Goodman, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Michael D. Kinkley, Spokane, WA, for defendant-appellee.

Before: WRIGHT, GOODWIN and HUG, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The government appeals from an order suppressing evidence of a machine gun that was seized during a warrantless search. Permission to search was given by a live-in sitter, whom the judge ruled had neither

actual nor apparent authority to consent. We consider only the requirements of apparent authority. We affirm.

## I. FACTS

Ronald Dearing is the single custodial parent of two teenaged children. His daughter, Michelle, has cerebral palsy. Dearing hired Donnie Blevins to assist him in caring for Michelle, and to help with the housekeeping. Blevins received a room and salary in exchange for his services.

Six months after he was hired, while Dearing was in Washington, D.C. with Michelle, Blevins called Agent Barbara Bourne of the Bureau of Alcohol, Tobacco and Firearms. He told her that he lived in the house to help with Michelle, and had seen in Dearing's bedroom what he thought was a machine gun. He also provided Bourne with serial numbers from the gun.

In another conversation several days later, Bourne told Blevins that she could not search the bedroom without a warrant unless he consented. Blevins said that he wished to consent. He also told her that he was planning to move out of the house soon.

The next day Bourne went to the Dearing home. Blevins told her that he had access to the entire house, and then signed a written consent-to-search form. Blevins led Bourne to the bedroom and opened the closed door. He emphasized that it was Dearing's bedroom, not his. Once inside, Bourne found what field-tested as a fully automatic machine gun.

Dearing was indicted for violating 18 U.S.C. § 922(o) (possession of a machine gun). He moved to suppress the gun as the fruit of an illegal search. The district judge ruled that Blevins lacked both actual and apparent authority to consent. The indictment was dismissed after the government stipulated that it had insufficient evidence to continue to prosecute Dearing. The government appeals.

## II. ANALYSIS

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731. Whether we review de novo as suggested by the government, or for clear error, our conclusion is the same.[1]

Although the Fourth Amendment prohibits only unreasonable searches, *Illinois v. Rodriguez*, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990), it "incorporates a strong preference for search warrants." *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir.1992) (citations omitted). Agent Bourne concededly had sufficient probable cause and ample opportunity to obtain a search warrant. She did not do so. She relied instead upon Blevins' consent to search Dearing's bedroom.

A consensual search is reasonable when the consent-giver has authority over the area searched. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). A third party has *actual* authority when he has "mutual use of the property [and also has] joint access or control for most purposes...." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. When the facts do not support a finding of actual authority, a search is reasonable if the consent-giver *apparently* has actual authority. *Rodriguez*, 497 U.S. at 188, 110 S.Ct. at 2801.

The existence of apparent authority entails a three-part analysis. First, did the searching officer believe some untrue fact that was then used to assess the extent of the consent-giver's use of and access to or control over the area searched? *United States v. Welch*, 4 F.3d 761, 765–66 (9th Cir.1993). Second, was it under the circumstances objectively reasonable to believe that the fact was true? *Rodriguez*, 497 U.S. at 188, 110 S.Ct. at 2801 (citing and quoting *Terry v.*

---

1. We have not decided the standard of review for apparent authority determinations. *See United States v. Welch*, 4 F.3d 761, 764 n. 4 (9th Cir. 1993). The circuits are split regarding the standard of review. The Eighth Circuit treats the entire analysis as a question of fact. *United States v. Brokaw*, 985 F.2d 951, 954 (8th Cir. 1993) (expressly holding that apparent authority is a question of fact reviewed for clear error). But the D.C. Circuit treats it as a mixed question of law and fact. *See, e.g., United States v. Patrick*, 959 F.2d 991, 996 n. 6 (D.C.Cir.1992) (factual findings in support of conclusion reviewed for clear error and conclusion regarding existence of authority reviewed de novo).

*Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)). Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have had actual authority? *Welch,* at 765 (apparent authority doctrine is "applicable only if the facts believed by the officers to be true would justify the search as a matter of law").

In his well-reasoned written opinion, the district judge ruled that Blevins did not have actual authority over Dearing's bedroom. The government has not appealed that ruling, which was amply supported by the evidence offered at the suppression hearing.[2] The only question is whether Bourne's mistaken belief that Blevins had authority over the bedroom was reasonable.

■ The government argues that what Blevins told Bourne made her belief reasonable. But the police are not allowed "to proceed on the theory that 'ignorance is bliss.'" 3 Wayne R. LaFave, Search & Seizure, § 8.3(g) (2d ed. 1987). "Even when the invitation [to search] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801.

■ At the time of this search, Bourne knew that Blevins lived in the house as caretaker and occasional housekeeper. Her belief that he had authority over the common areas of the house was clearly reasonable. But she also believed that Blevins had use of and access to or control over Dearing's bedroom. The district judge found that this belief was not objectively reasonable. We agree.

Bourne knew only that Blevins had been in the bedroom on prior occasions. The mere fact of access, without more, does not indicate that the access was authorized. The bedroom door was closed at the time of the search. Blevins said and did nothing to indicate that Dearing knew of, or authorized, his excursions into the bedroom. And Bourne knew that Blevins' relationship with Dearing was nearing an end. But she never inquired

into the extent of Blevins' currently authorized access to the bedroom, or the extent to which Dearing kept his bedroom off-limits. Under these circumstances, the district judge held that a reasonable agent would have inquired further, and we agree.

The government argues that *United States v. Kelley,* 953 F.2d 562 (9th Cir.1992), requires that we reverse. *Kelley* is inapposite. There, the police knew that the consent-giver had unrestricted permission to enter her cotenant's bedroom to use the telephone. *Id.* at 564. Here, the lack of knowledge about the extent of Blevins' permission to enter Dearing's bedroom is precisely what made Bourne's reliance on Blevins' assertions unreasonable.

### III. CONCLUSION

The apparent authority doctrine cannot salvage an unreasonable warrantless search. Because a reasonable agent would have doubted that Blevins had mutual use and joint access or control for most purposes over Dearing's bedroom, Bourne's reliance on Blevins' consent was unreasonable.

**AFFIRMED.**

---

**2.** The district judge found that "[n]ot only did Mr. Bleivans [sic] lack joint access or control for

most purposes, he lacked it for *any purpose.*"